PAULETTE SCHOLL, as Administratrix of the Estate of ROBERT SCHOLL, Deceased, Respondent-Appellant, v TOWN OF BABYLON, Appellant-Respondent, and HENRY HITZ et al., Respondents.

Second Department, September 26, 1983

**APPEARANCES OF COUNSEL**

*Kelly, Rode, Kelly & Burke, (John D. Kelly* and *Stephen P. Burke* of counsel), for appellant-respondent.

*McCoy & Agoglia, P.C. (Harold V. McCoy* and *Blane Magee* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

BROWN, J.

The primary question presented for our resolution herein is whether the instant action — which arises out of

the death of plaintiff's decedent after he was struck by a pleasure boat while crabbing within the navigable waters of the State — is governed by State substantive law or whether it is subject to admiralty jurisdiction and controlled by principles of general maritime law. Since the incident occurred prior to the advent of comparative negligence in New York, if the action falls within the purview of State law, the rule of contributory negligence applies. If it is subject to general maritime law — as we conclude it is — the doctrine of comparative negligence is applicable.

The facts are without significant dispute. On August 23, 1975, plaintiff's decedent, Robert Scholl, was struck by a 17-foot pleasure boat while crabbing in the navigable waters of the Great South Bay off the shore of Tanners Bay Park. The park is owned and operated by the Town of Babylon. Scholl, who was at the time using a snorkel, mask, fins and a net, suffered multiple head injuries in the accident and died three days later. The boat which struck him was owned by defendant Henry Hitz and was operated by defendant David Hitz. At the time of the accident neither Scholl nor either of the Hitzes was engaged in commercial activity. Scholl was survived by his wife, the plaintiff herein, and three infant children.

On November 20, 1975, a notice of claim was served upon the town pursuant to section 50-e of the General Municipal Law, which, *inter alia,* stated that plaintiff Paulette Scholl was administratrix of Robert Scholl's estate. Plaintiff was not duly appointed administratrix of the estate, however, until April 27, 1976. This action was commenced shortly thereafter. Following joinder of issue and the completion of discovery proceedings, the town made a motion which had two branches.

In one branch the town sought leave to amend its answer to assert the defense of the contributory negligence of the decedent (EPTL 5-4.2), claiming that the action was governed by common-law principles of negligence and New York's wrongful death statute (EPTL 5-4.1 *et seq.*), rather than the principles of general maritime law. The court, concluding that the incident did not arise out of "traditional maritime activity" and that more than the mere occurrence of a tort on navigable waters was required in

order to bring the matter within the scope of Federal admiralty jurisdiction, granted that branch of the town's motion which was to amend its answer, holding that the action was governed by the State wrongful death statute in effect on the date the accident occurred.

In the other branch of its motion the town sought dismissal of the complaint as against it on the grounds that the plaintiff had failed to comply with the notice of claim provisions of sections 50-e and 50-i of the General Municipal Law. It argued that the notice of claim was defective since at the time of its service the plaintiff had yet to be appointed as the representative of the decedent's estate. The court denied the motion stating, *inter alia,* that under the facts any defect in the notice should be deemed waived.

██ We are of the view that while the court was correct in denying that branch of the town's motion which sought dismissal of the complaint as against it, it erred in granting the branch which sought leave to amend the town's answer to assert the defense of contributory negligence and in concluding thereby that principles of general maritime law are inapplicable upon the trial of this action.

█ Admiralty jurisdiction extends to those cases of damage or injury on navigable waters where the accident bears a significant relationship to traditional maritime activity regardless of whether the activity involved was of a commercial or noncommercial nature (*Foremost Ins. Co. v Richardson,* 457 US 668; *Executive Jet Aviation v City of Cleveland,* 409 US 249; US Code, tit 28, § 1333).

Prior to the decision of the Supreme Court of the United States in *Executive Jet,* the scope of admiralty jurisdiction was measured solely by the application of a locality test, i.e., whether the alleged wrong occurred upon navigable waters (see *Levinson v Deupree,* 345 US 648; *The Plymouth,* 3 Wall [70 US] 20). In *Executive Jet,* however, faced with a claim for property damage to an airplane which crashed into Lake Erie upon takeoff, the court rejected this mechanical application of the locality rule and held that claims arising from airplane accidents are cognizable in admiralty only when the accident bears a significant relationship to traditional maritime activity (*Executive Jet Aviation v City of Cleveland,* 409 US 249, 268, *supra*).

In *Foremost,* the court expanded upon its rejection of the locality rule in *Executive Jet (supra)* by applying it to cases beyond the context of aviation torts. *Foremost* involved a collision on a river in Louisiana between two pleasure boats, neither of which had ever been involved in commercial activity (*Foremost Ins. Co. v Richardson,* 457 US 668, *supra*). In affirming the finding of the Court of Appeals that "two boats, regardless of their intended use, purpose, size, and activity, are engaged in traditional maritime activity when a collision between them occurs on navigable waters" (*Richardson v Foremost Ins. Co.,* 641 F2d 314, 316), the Supreme Court stated that "[b]ecause the 'wrong' here involves the negligent operation of a vessel on navigable waters, we believe that it has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court" (*Foremost Ins. Co. v Richardson,* 457 US 668, 674, *supra*). Specifically rejected was the argument that a relationship with commercial maritime activity is essential to the invocation of admiralty jurisdiction. The court reasoned that:

"Although the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce, petitioners take too narrow a view of the federal interest sought to be protected. The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce. For example, if these two boats collided at the mouth of the St. Lawrence Seaway, there would be a substantial effect on maritime commerce, without regard to whether either boat was actively, or had been previously, engaged in commercial activity. Furthermore, admiralty law has traditionally been concerned with the conduct alleged to have caused this collision by virtue of its 'navigational rules — rules that govern the manner and direction those vessels may rightly move upon the waters'. *Executive Jet,* 409 U.S., at 270. The potential

disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce.

"Yet, under the strict commercial rule proffered by petitioners, the status of the boats as 'pleasure' boats, as opposed to 'commercial' boats, would control the existence of admiralty jurisdiction. Application of this rule, however, leads to inconsistent findings or denials of admiralty jurisdiction similar to those found fatal to the locality rule in *Executive Jet.* Under the commercial rule, fortuitous circumstances such as whether the boat was, or had ever been, rented, or whether it had ever been used for commercial fishing, control the existence of federal-court jurisdiction. The owner of a vessel used for both business and pleasure might be subject to radically different rules of liability depending upon whether his activity at the time of a collision is found by the court ultimately assuming jurisdiction over the controversy to have been sufficiently 'commercial.' We decline to inject the uncertainty inherent in such line-drawing into maritime transportation. Moreover, the smooth flow of maritime commerce is promoted when all vessel operators are subject to the same duties and liabilities. Adopting the strict commercial rule would frustrate the goal of promoting the smooth flow of maritime commerce, because the duties and obligations of non-commercial navigators traversing navigable waters flowing through more than one State would differ 'depending upon their precise location within the territorial jurisdiction of one state or another.' *Richardson v. Foremost Insurance Co.,* 641 F.2d, at 316.

"Finally, our interpretation is consistent with congressional activity in this area. First, Congress defines the term 'vessel,' for the purpose of determining the scope of various shipping and maritime transportation laws, to include all types of waterborne vessels, without regard to whether they engage in commercial activity. See, *e.g.,* 1 U.S.C. § 3 (' "vessel" includes every description of watercraft or other artificial contrivance used, or capable of

being used, as a means of transportation on water'). Second, the federal 'Rules of the Road,' designed for preventing collisions on navigable waters, see, *e.g.,* 94 Stat. 3415, 33 U.S.C. § 2001 *et seq.* (1976 ed., Supp. IV), apply to all vessels without regard to their commercial or noncommercial nature. Third, when it extended admiralty jurisdiction to injuries on land caused by ships on navigable waters, Congress directed that '[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury ... *caused by a vessel on navigable water ...*' Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 U.S.C. § 740" (*Foremost Ins. Co. v Richardson,* 457 US 668, 674-677, *supra*).

Applying the reasoning of the *Foremost* case, we conclude that the case at bar is subject to admiralty jurisdiction. The accident concededly occurred on navigable waters and under *Foremost* the fact that the Hitz vessel was a pleasure boat rather than a commercial vessel has no bearing on the application of admiralty jurisdiction. Further, although *Foremost* involved a collision between two vessels, the court's fundamental reasoning there is equally applicable to a case such as the instant one where a single vessel, through alleged negligence, collides with a person or an object. An additional factor that cannot be overlooked is that the decedent here, although not himself in a vessel, was engaged in a traditional maritime related activity, to wit, fishing or crabbing, at the time of the accident. The proper navigation of vessels in areas where there are swimmers and fishermen is an appropriate subject for admiralty jurisdiction since it is directly related to the Federal interest in protecting maritime commerce by assuring that all vessels on navigable waters are subject to uniform rules of conduct (*Foremost Ins. Co. v Richardson,* 457 US 668, 676-677, *supra*).

Those cases relied upon by the town in which courts have refused to apply admiralty jurisdiction to accidents involving swimmers where no boat is involved are distinguishable on their facts (*Onley v South Carolina Elec. & Gas Co.,* 488 F2d 758, diver injured; *Rubin v Power Auth.,* 356 F Supp 1169, divers killed; *Davis v City of Jacksonville Beach,* 251 F Supp 327, swimmer injured by surfboard;

*McGuire v City of New York,* 192 F Supp 866, bather injured). At bar, the injury was caused by a vessel rather than a surfboard or some submerged object.

Also distinguishable on their facts are those cases relied upon by the town which decline to extend admiralty jurisdiction to accidents involving waterskiers (see *Crosson v Vance,* 484 F2d 840; *Jorsch v LeBeau,* 449 F Supp 485; *Webster v Roberts,* 417 F Supp 346). In our view, waterskiing, unlike fishing, is not a traditional maritime activity. Moreover, inasmuch as these cases were decided prior to the decision of the Supreme Court of the United States in *Foremost* — a decision which instructs us that vessels on navigable waters should be held to consistent rules of navigation and conduct regardless of the activity in which they are engaged — we find their rationale to be unpersuasive.

While Federal courts have primary jurisdiction over maritime torts, under the "saving to suitors" clause of the statute conferring admiralty jurisdiction, State courts have concurrent jurisdiction of tort actions in personam, except in those cases where exclusive jurisdiction has been conferred upon the Federal courts (*Messel v Foundation Co.,* 274 US 427; *Kellog & Sons v Hicks,* 285 US 502; US Code, tit 28, § 1333, subd [1]; 2 CJS, Admiralty, §§ 13, 69). In general, if a tort is a maritime tort cognizable in admiralty, maritime law governs with respect to the rights and liabilities of the parties regardless of whether the action is brought in a State or Federal court (*Carlisle Packing Co. v Sandanger,* 259 US 255; *Chelentis v Luckenbach S. S. Co.,* 247 US 372; 2 CJS, Admiralty, § 70).

For many years, however, it was held that admiralty itself conferred no right of action for wrongful death (*The Harrisburg,* 119 US 199) but that where, as here, a person's death resulted from a maritime tort committed on navigable waters within a State whose statutes gave a right of action on account of death by a wrongful action, the admiralty courts would entertain an in personam action for damages (*Western Fuel Co. v Garcia,* 257 US 233, 242; see, also, *Hess v United States,* 361 US 314; *The Tungus v Skovgaard,* 358 US 588; *United Pilots Assn. v Halecki,* 358 US 613). Admiralty enforced the State statute as it would a

statute arising in a foreign jurisdiction (*Hess v United States, supra,* p 319; *Levinson v Deupree,* 345 US 648, *supra*), and when invoked to protect rights rooted in a State law, endeavored to determine the issues in accordance with the substantive law of the State (*Garrett v Moore-McCormack Co.,* 317 US 239, 245). In these cases it was held that when admiralty adopted a State right of action for wrongful death, it enforced the right as an integrated whole subject to whatever conditions and limitations the creating State has attached (*The Tungus v Skovgaard, supra,* p 592); and the conduct which gave rise to liability was to be measured not under admiralty's standards of duty but under the substantive standards of the State law (*United Pilots Assn. v Halecki, supra,* p 615).

In *Moragne v States Mar. Lines* (398 US 375), however, the Supreme Court expressly overruled *The Harrisburg* (119 US 199, *supra*) and recognized for the first time a right to recover for wrongful death under general maritime law. The court stated (p 401): "Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts".

When a wrongful death action is brought pursuant to general maritime law, admiralty principles of comparative negligence apply (see *Hornsby v Fish' Meal Co.,* 431 F2d 865; *Simpson v Knutsen,* 444 F2d 523), regardless of whether the action is brought in Federal or State court (see *Kermarec v Compagnie Generale,* 358 US 625; *Carlisle Packing Co. v Sandanger,* 259 US 255, *supra;* 2 Benedict, Admiralty [7th ed], § 88).

In developing the scope of this new maritime wrongful death cause of action, there has also been general agreement that the damages recoverable thereunder include not only loss of support but also recovery akin to that provided by survival statutes (such as EPTL 11-3.2, subd [b]) for the decedent's conscious pain and suffering (see *Dennis v Central Gulf S. S. Corp.,* 453 F2d 137, cert den 409 US 948).

Thus, in accordance with *Moragne v States Mar. Lines* (398 US 375, *supra*) and its progeny, we conclude that both

the wrongful death and the pain and suffering causes of action in the case at bar are governed by general maritime law and that the doctrine of comparative negligence, rather than that of contributory negligence under New York's wrongful death statute in effect at the time of the accident, is applicable to this case.

■ Finally, in concluding as we do that Special Term correctly denied that branch of the town's motion which was to dismiss the complaint herein as against it for the alleged failure of plaintiff to comply with the notice of claim provisions of the General Municipal Law, we would point out that since this action is governed by general maritime law and State statutes may not operate so as to interfere with plaintiff's substantive admiralty rights, the notice of claim provisions of the General Municipal Law are inapplicable (*Rogers v City of New York,* 46 Misc 2d 373). Moreover, even were we to conclude that these notice of claim provisions are applicable, under the circumstances of this case, we would hold that plaintiff should be allowed leave to file a corrected notice of claim pursuant to subdivision 6 of section 50-e of the General Municipal Law (see *Collins v City of New York,* 55 NY2d 646; *Winbush v City of Mount Vernon,* 306 NY 327).

■ ■ In summary then, we conclude that while Special Term correctly denied that branch of the town's motion which sought dismissal of the complaint herein, it was in error in granting the branch thereof which sought to amend the town's answer to assert the defense of contributory negligence on the ground that common-law negligence principles should apply to this action rather than general maritime law. The trial of this action should be governed by the doctrine of comparative negligence rather than that of contributory negligence.

Lazer, J. P., Gulotta and Boyers, JJ., concur.

Order affirmed insofar as appealed from by the defendant Town of Babylon; order reversed insofar as appealed from by plaintiff, and that branch of the motion of the defendant town which sought leave to amend its answer to assert the defense of contributory negligence is denied. Plaintiff is awarded costs.