Jerry DUPLANTIS

v.

TEXACO, INC., et al.

Civ. A. No. 90–1657.

United States District Court,
E.D. Louisiana.

Aug. 31, 1991.

Ernest N. Souhlas, The Souhlas Law Firm and Joshua Atwood Tilton, The Tilton Law Firm, Covington, La., for plaintiff.

Daniel L. Daboval and Lawrence R. Plunkett, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant Texaco's Motion to Dismiss Plaintiff's Loss of Consortium and Punitive Damages Claims. The matter was set for oral hearing on August 28, 1991, but was submitted on the briefs.

## I. FACTUAL BACKGROUND.

This suit involves the plaintiff Jerry Duplantis pursuant to 28 U.S.C. § 1333(1) [general maritime law] and 28 U.S.C. § 1332 [diversity]. At the time of the accident which is the subject matter of this suit, Jerry Duplantis was the captain and owner of a fishing vessel documented as the F/V NIGHT WING. Plaintiff's allegations include that on or about November 5, 1989, while trawling in the waters known as Rabbit Island Field [1], he caught his fishing nets in submerged creosote pilings left by the defendant Texaco as a result of "plugging and abandoning" operations.[2]

---

1. Rabbit Island Field is a portion of the bed of the Gulf of Mexico allegedly leased by defendant Texaco, Inc. from the State of Louisiana.

2. Plugging and abandoning operations are employed with respect to oil wells that have ceased producing economically, and involves cutting off the oil supply below the water bottom, dismantling and ultimately removing the superstructure.

The plaintiff further alleges the area was not marked as required by law.

Plaintiff claims his back injury occurred as a result of his efforts to free his nets from the obstructions allegedly left by Texaco. Plaintiff's further allegations material to the issue of punitive damages are that Texaco's failure to mark the areas where plugging and abandoning operations were completed amounts to gross, willful and wanton negligence, considering knowledge on the part of defendant that fisherman, such as plaintiff, regularly and on a continuing basis trawl in and about Rabbit Island Field. Finally plaintiff avers that such punitive damages are available under the general maritime law for such willful and wanton conduct.

## II. THE LAW.

■ As to the spousal claim for loss of consortium, this Court has previously held *Cater v. Placid Oil Co.*, 760 F.Supp. 568 (E.D.La.1991), that the General Maritime Law does not allow a seaman's wife to recover such loss in a claim under the general maritime law. This holding having been uniformly accepted throughout the Eastern District of Louisiana, is similarly the rule of this case.

■ The rules regarding the recoverability of punitive damages under the general maritime law are not so cut and dry. As noted in *In re Mardoc*, Asbestos Case Clusters 1, 2, 5 and 6, 768 F.Supp. 595 (E.D.Mich.1991) (Cohn and Friedman, J.), the seminal Supreme Court case involving "lawless misconduct" which rose to a level of "gross and wanton outrage" was *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558, 4 L.Ed. 456 (1818) [a suit for marine trespass]. It was defendant's evil state of mind which made the award of punitive damages appropriate.

The *Mardoc* court concluded that in an **unseaworthiness** action under the general maritime law because state of mind is wholly irrelevant, punitive damages may not be awarded.

This Court disagrees with the potential broad brush of the statement the court in *Donaghey v. Ocean Drilling and Exploration Co.*, 1991 WL 99490, 1191 LEXIS 7734 (E.D.La. June 5, 1991) (Judge Livaudais) to the effect that "the Supreme Court has recently limited the available damages in wrongful death claims brought under the General Maritime law to such damages as are available under the Jones Act, i.e. pecuniary," citing *Miles v. Apex Marine Corp.*, — U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

The basic premise of *Apex Marine,* supra, was rather uniformity and the **intended role of the Jones Act in effecting that constitutionally required uniformity in that exercise of admiralty jurisdiction.** Tacking back to the point in time where the Jones Act became law, the general maritime law provided no recovery for what ailed the injured seaman's spouse. Accordingly, there being **no recognition of spousal recovery for loss of consortium**, the Court concluded ipso facto, neither did the Jones Act.

Whether characterized as pecuniary or nonpecuniary damages, as early as the *Amiable Nancy,* supra, the general maritime law contemplated punitive damages for gross and wanton conduct in an action under the general maritime law *not based on unseaworthiness.* The Fifth Circuit first recognized the cause of action for punitive damages under the general maritime law in *In re Merry Shipping,* 650 F.2d 622, 625 (5th Cir.1981).[3] Although rendered long after the adoption of the Jones Act in 1920, *In re Merry Shipping* is not without precedent prior thereto (i.e., the *Amiable Nancy* decided in 1818).

The case at bar involves plaintiff's claim under the general maritime law for injuries resulting *not from unseaworthiness,* but rather on account of defendant Texaco's alleged willful and wanton failure to remove debris from plugging and abandoning operations and to mark the areas where

---

**3.** See, *LeBleu v. Mud Control Equipment Corp.*, 1991 WL 110406, 1991 LEXIS 8124, C.A. No. 90–4248 (decided June 10, 1991) [citing *In re Merry*

*Shipping,* and stating, "the case law ... clearly indicates the availability of punitive damages, at least under the general maritime law."].

such plugging and abandoning occurred. Plaintiff's suit is not a suit under the Jones Act, rather it comes under the general maritime law and includes allegations to the effect that Texaco willfully violated its duty owed as a mineral leaseholder.

In other words, this Court is of the opinion that *Apex Marine, Donaghey,* and *Mardoc,* supra, cited in Texaco's brief for the proposition that recovery under the general maritime law are limited to pecuniary damages only, are thus obviously inapposite.

Moreover, the Court being no stranger to this case having recently pre-tried and continued same, is aware that there indeed exist material issues of fact regarding corporate awareness of conduct of those who performed plugging and abandoning operations. Evidence that Texaco routinely paid claims for damages done to plaintiff's and other fishermen's nets in the Rabbit Island field before plaintiff's injury, rather than clean up its lease may be conduct from which a jury may infer knowledge on the part of Texaco. However, the Court is not inclined to rule in that regard at this juncture, specifically reserving any evidentiary rulings for trial on the merits.

The testimony of plaintiff himself and other fishermen to the effect that Texaco paid claims rather than clean up its lease serve to contest material issues of fact. Unquestionably, the plaintiff's testimony, as well as fellow fishermen, to whom Texaco paid net damage claims prior to the accident in question may well reflect knowledge and a pattern of conduct on Texaco's part. Accordingly, considering the foregoing, the submissions of the party, and the applicable law,

IT IS ORDERED that Defendant's Motion to Strike Consortium Claims is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's Punitive Damage Claim is DENIED, however specifically reserving the right of the defendant TEXACO to reurge same at the time of trial in the form of a Motion for Directed Verdict.