*39 OPINION OF THE COURT
Lewis R. Friedman, J.
These motions in related cases arise from the same facts and action No. 3 is consolidated solely for the purpose of decision.
These actions in admiralty arise from the allision of a vessel owned and operated by the defendant Circle Line Sightseeing Yachts, Inc. (Circle Line) with the Willis Avenue Bridge owned and operated by the City of New York (the City). Plaintiffs allege that they were passengers on the vessel and were injured by the allision. Circle Line sued, in the United States District Court for the Southern District of New York, for exoneration or limitation of liability. The City and Circle Line agreed to apportion compensatory damages between themselves: they would share equally up to $1,000,000 and the City would pay the rest. The order of Judge Knapp lifted the stay of all proceedings and permitted the parties to proceed in State court. The order further provided that if exemplary damages were awarded against Circle Line, enforcement of any judgment was stayed pending a resolution of the limitation proceeding (Matter of Circle Line Sightseeing Yachts, US Dist Ct, SD NY, Knapp, J., 86 Civ 9051).
Plaintiffs in the Frazer and Gleaner cases served an amended complaint which asserted claims for punitive damages against the City on the ground that for at least four years prior to the incident the Coast Guard had issued citations, with potential fines, for the deteriorated fender system surrounding the bridge and obstructing the draw. The State Department of Transportation had also issued reports to the City on the poor condition of the bridge. Plaintiffs contend that after ample notice of the defective conditions, the City made a conscious decision to ignore those violations.
This court had previously granted the motion by Frazer plaintiffs for summary judgment on liability for compensatory damages. The City was granted leave to file an untimely answer. The answer alleged that the City was immune from punitive damages. The City moves to dismiss the punitive damage claims. In Kern, plaintiff moves for summary judgment on liability. The City and Circle Line oppose on the ground that the existing complaint does not properly allege punitive damages and, if the court grants leave to amend, that the City is immune from those damages.
The parties agree that the reported cases do not discuss *40 whether a municipality may be liable for punitive damages in an action in admiralty.
Under well-established law the rights of parties in a maritime tort must be determined by the admiralty and maritime law, regardless of whether the action is brought in State or Federal court (see, e.g., Spencer Kellogg Co. v Hicks, 285 US 502; Hess v United States, 361 US 314, 316; 46 USC, Appendix § 740). Federal maritime law, not State law, governs (Pope & Talbot v Hawn, 346 US 406, 409 [1953]; Alvez v American Export Lines, 46 NY2d 634, 638-639 [1979], affd 446 US 274 [1980]; Scholl v Town of Babylon, 95 AD2d 475, 481). The parties all agree that punitive damages are generally available under maritime law. They acknowledge that the rule has been established at least since 1818 (e.g., The Amiable Nancy, 16 US [3 Wheat] 546, 558-559 [1818]; Vaughan v Atkinson, 369 US 527 [1962]; see also, Lake Shore & Mich. S. Ry. Co. v Prentice, 147 US 101 [1893]).
The issue of the availability of punitive damages is not as well settled as the parties believe. Most circuits acknowledge that punitive damages are available (e.g., Matter of P & E Boat Rentals v Ennia Gen. Ins. Co., 872 F2d 642, 650-652 [5th Cir 1989]; Protectus Alpha Nav. Co. v North Pac. Grain Growers, 767 F2d 1379, 1386 [9th Cir 1985]; Muratore v M/S Scotia Prince, 845 F2d 347, 356 [1st Cir 1988]; Matter of Merry Shipping v Merry Shipping Co., 650 F2d 622, 625 [5th Cir 1981]; Robinson v Pocahontas, Inc., 477 F2d 1048, 1051 [1st Cir 1973]; Kraljic v Berman Enters., 575 F2d 412, 415-416 [2d Cir 1978]). At least one circuit refused to reach the issue (e.g., Phillip v United States Lines Co., 355 F2d 25 [3d Cir 1966]), while others have been less than enthusiastic (e.g., Petition of Den Norske Amerikalinje, 276 F Supp 163, 173-174 [ND Ohio 1967], revd sub nom. United States Steel Corp. v Fuhrman, 407 F2d 1143, 1146 [6th Cir 1969]; Furka v Great Lakes Dredge & Dock Co., 755 F2d 1085, 1091 [4th Cir 1985] [punitive damages are "at least theoretically available under general maritime law”]). There is "disagreement and confusion as to recovery of punitive damages in actions under the general maritime law” (Waddell, Punitive Damages in Admiralty, 19 J of Mar Law & Com 65, 73 [Jan. 1988]).
The matter was further complicated when, in Miles v Apex Mar. Corp. (498 US 19 [1990]), the Supreme Court limited general maritime law damages, at least in cases under the Jones Act (46 USC, Appendix § 688) and the Death on the *41 High Seas Act (DOHSA) (46 USC, Appendix § 761 et seq.) to actual damages. A few Federal cases have discussed Miles and held that punitive damages are available other than under the Jones Act and the Death on the High Seas Act. (CEH, Inc. v FV "Seafarer”, 148 FRD 469, 471-473 [D RI 1993], affd 153 FRD 491 [D RI 1994]; Duplantis v Texaco, Inc., 771 F Supp 787, 788 [ED La 1991].) Most cases have applied Miles to bar punitive damages under the Jones Act. (E.g., Boykin v Bergesen, D.Y. A/S, 822 F Supp 324, 326 [ED Va 1993]; Matter of Waterman S. S. Corp., 780 F Supp 1093; Horsley v Mobil Oil Corp., 825 F Supp 424 [D Mass 1993].)
The court must first reach the issue, not definitely resolved in the cases, whether punitive damages are permissible in admiralty after Miles (supra). In Miles the high Court held that since the statutory Jones Act and DOHSA claims permitted only pecuniary damages, the recovery on an unseaworthiness claim should be similarly limited. As one court has noted: Miles holds that "a plaintiff who is statutorily barred from receiving a punitive award cannot recover punitive damages by couching his claim in the judge-made general maritime law of negligence and unseaworthiness.” (Anderson v Texaco, Inc., 797 F Supp 531, 535 [ED La 1992].)
The post-Miles cases (supra) each appear to turn on whether the claim before the court relates to the Jones Act or DOHSA. Vaughan v Atkinson (supra) had specifically upheld limited punitive damages for "willful and persistent” failure to pay maintenance and cure. Where the claim is for maintenance and cure some courts have let punitive damages stand, since Miles did not state that it overruled Vaughan (Anderson v Texaco, Inc., supra; Ortega v Oceantrawl, Inc., 822 F Supp 621, 624 [D Alaska 1992]; Ridenour v Holland Am. Line Westours, 806 F Supp 910, 911 [WD Wash 1992]), while others have denied a claim for punitive damages in the same situation (La Voie v Kualoa Ranch & Activity Club, 797 F Supp 827, 829-831 [D Haw 1992]; Matter of Mardoc Asbestos Case Clusters 1, 2, 5 & 6, 768 F Supp 595, 599-600 [ED Mich 1991]). In a separate line of cases the courts have held that Miles did not seek to go beyond developing a consistency between general maritime law and the Jones Act and DOHSA (CEH, Inc. v FV "Seafarer”, supra, 148 FRD, at 472-473; Duplantis v Texaco, Inc., supra). The Second Circuit, without extensive discussion, has recently stated in dictum that Miles precludes punitive damages in a general maritime law survival claim. (Wahlstrom v Kowasaki Heavy Indus., 4 F3d 1084, 1094.) The court *42 limited its holding to denying punitive damages when other nonpecuniary damages were also barred (4 F3d, at 1094).
This court’s review of Miles (supra) establishes that the high Court had no intention of going beyond the issues presented. The Court’s decision was grounded in the legislative history of DOHSA which limited damages recoverable in a wrongful death as to "pecuniary loss sustained by the persons for whose benefit the suit is brought” (Miles v Apex Mar. Corp., 498 US, at 31). While the Jones Act on its face does not contain the same restrictions on relief, the Jones Act incorporates the substantive provisions of the Federal Employers’ Liability Act (FELA) (45 USC § 51). As a result of Michigan Cent. R. R. v Vreeland (227 US 59, 69-71 [1913]), with which Congress was familiar when it passed the Jones Act, FELA limited damages to pecuniary loss (Miles v Apex Mar. Corp., 498 US, at 32). Since there was no recoverable nonpecuniary loss under the Jones Act or DOHSA, the Court denied that form of recovery under the general maritime law for unseaworthiness. The Court relied on the concept of uniform results regardless of the theory of the case. "It would be consistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence” (Miles v Apex Mar. Corp., 498 US, at 32-33). Nothing in Miles deals with general maritime or admiralty law claims which result from willful or wanton misconduct which is not the result of unseaworthiness. It must be remembered that the earliest causes of action for punitive damages were for "lawless misconduct” which rose to the level of "gross and wanton outrage, without any just provocation or excuse” (The Amiable Nancy, supra, 16 US [3 Wheat], at 558). The allegations against the City here are that with full knowledge, for many years, of the defective conditions of the bridge’s fender system it allowed encroachments on the draw and failed and refused to do the required repairs.
Other State courts have generally declined to limit punitive damages even after Miles (supra) (Mistich v Pipelines, Inc., 609 So 2d 921, 935 [La Ct App 1993], cert denied 613 So 2d 996 [La 1993]; see, Penrod Drilling Corp. v Williams, 868 SW2d 294 [Tex 1993]). This court joins the courts in Duplantis and CEH (supra) in holding that Miles did not bar punitive damage claims that arise from general maritime law unrelated to seaworthiness Jones Act or DOHSA claims.
*43 Since the court finds that punitive damages are permissible under the circumstances here, the court must determine whether they are available against the City. Plaintiffs argue, in essence, that since the general maritime and admiralty law permit punitive damages and there are no cases precluding those damages against a municipality, they must be permitted against any defendant, including the City. The City, on the other hand, relies on Newport v Facts Concerts (453 US 247 [1981]) for the proposition that under common law a municipality is not subject to punitive damages. It is well settled in New York that generally the waiver of sovereign immunity against suit does not include a waiver of immunity for punitive damages (Sharapata v Town of Islip, 56 NY2d 332, 335-337). The Court of Appeals also noted the reaffirmation of that rule in Public Officers Law § 17 (3) (a), (c) and § 18 (4) (b), (c) where the State does not indemnify officials for "exemplary damages, fines or penalties.” This the City suggests should end the inquiry.
Under the "savings to suitors” clause of the Judiciary Act of 1789 (28 USC § 1333 [1], 1 US Stat 76), States are constrained by the " 'reverse Erie’ doctrine which requires that the substantive remedies afforded by States conform to governing federal maritime standards” (Offshore Logistics v Tallentire, 477 US 207, 223 [1986]). Thus, State procedural rules may apply only as long as they are not outcome determinative.*
The court must look to the traditional sources of law: common law, statutory law and general maritime law, to determine the position of the City in an admiralty punitive damage claim.
The common law has traditionally rejected punitive damages against municipalities. As in New York (see, Sharapata v Town of Islip, supra) the vast majority of States have for a long time rejected punitive damage claims (see, Newport v Facts Concerts, supra, 453 US, at 260-263, and cases cited therein). The Supreme Court concluded in Newport that the drafters of the Civil Rights Act of 1871 (42 USC § 1983) did not intend to overrule the common law (453 US, at 265-266). Further the Supreme Court performed the same analysis as *44 the Court of Appeals in Sharapata to conclude that there is no public policy that favors punitive awards against municipalities as opposed to awards against the actual malefactors. The Court noted that one of the purposes of section 1983 was to deter similar conduct (453 US, at 268). It found no proof that punitive awards which "punish” the taxpayers would deter public officials. (453 US, at 268-270.) The Supreme Court in Pacific Mut. Life Ins. Co. v Haslip (499 US 1, 14) found that the Alabama common-law rule making corporations liable for punitive damages for the acts of employees in the scope of their employment "rationally advances the State’s goal” to deter fraud by employees by increasing oversight. Clearly that decision did not overrule Newport’s analysis of the common law or even discuss that case and its progenitors. Merely because a State rule is constitutionally permissible does not make it desirable.
There are no statutory rules which provide guidance. Both sides refer to the Federal Tort Claims Act (FTCA) (28 USC § 2671 et seq.) which bars punitive damages claims against the United States (28 USC § 2674). That statute was clearly necessary to prevent punitive damages in those States where the local law permitted it. The legislative history of the FTCA does not reveal any general discussion of municipal liability for punitive damages or any discussion on it. Nor can the FTCA be read as enacting, by necessary implication, disability, for municipalities.
Maritime law, as discussed above, is equivocal about whether punitive damages should be awarded in any case. Those courts which have found them have applied principles which are inapplicable in the case before the court. While maritime tort law borrows from general principles of negligence law (see, e.g., Consolidated Aluminum Corp. v Bean Corp., 833 F2d 65 [5th Cir 1987]), the court cannot find any firm principles of general tort law that would require that punitive damages be recognized in cases at admiralty.
In short the court is unable to find support for extending the availability of punitive damages to the City in the cases at bar.
The City’s motion to dismiss the punitive damage claims in the Frazer and Gleaner cases is granted. The Kern plaintiff’s motion for summary judgment of liability for compensatory damages is granted and his motion for summary judgment on punitive damages is denied.

 The Texas courts have held that the limitation of the waiver of sovereign immunity under the Texas Tort Claim Act applied to bar exemplary damages in a maritime case (Guillory v Port of Houston Auth., 845 SW2d 812, 815 [Tex 1993]; see, State Dept. of Highways & Pub. Transp. v Dopyera, 834 SW2d 50, 51-52 [Tex 1992]).