649 So.2d 554 (1994)
Ivy Renee STRAWDER, Plaintiff-Appellee,
v.
ZAPATA HAYNIE CORPORATION, et al., Defendant-Appellant.
Rosalie Bartie VITAL, et al., Plaintiff-Appellee,
v.
ZAPATA HAYNIE CORPORATION, et al., Defendant-Appellant.
Nos. 94-453, 94-454.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*557 John Peter Napolitano Jr., New Orleans, Jack W. Caskey, Nicholas Pizzolatto Jr., Lake Charles, Deborah DeRoche Kuchler, New Orleans, for Ivy Renee Strawder.
David William Leefe, Donald R. Abaunza, James Augustus Burton, Sherman Gene Fendler, Thomas John Fischer, New Orleans, Jennifer J. Bercier, J.B. Jones Jr., Cameron, Frank J. Peragine, Don Keller Haycraft, New Orleans, Dennis M. Dylewski, John L. Verner, Houston, TX, for Natural Gas Pipeline of America, Inc.
Kevin Richard Tully, Michael Mossy Christovich, New Orleans, Jennifer J. Bercier, J.B. Jones Jr., Cameron, for Hall-Houston Offshore, Etc.
John Peter Napolitano Jr., New Orleans, Jack W. Caskey, Nicholas Pizzolatto Jr., Lake Charles, Gano D. Lemoine Jr., Lafayette, Deborah DeRoche Kuchler, New Orleans, for Rosalie Bartie Vital et al.
Before LABORDE, YELVERTON and DECUIR, JJ.
LABORDE, Judge.
The families of two crew members who died aboard a fishing vessel that exploded after the boat struck a submerged pipeline filed suit for wrongful death. Defendant pipeline company appeals a judgment rendered against it, claiming that the damage award is excessive. After reviewing the record, we affirm the damage award, finding no abuse of discretion. The plaintiffs answered the appeal, asking us to find that the trial court erred in not allowing them to present a claim for punitive damages. We agree that this was error, and remand for a trial of that element of damages.

FACTS
On October 3, 1989, the F/V NORTHUMBERLAND, a fishing vessel operating in the Gulf of Mexico off the coast of Sabine Pass, Texas, struck an unmarked natural gas pipeline owned and operated by Natural Gas Pipeline Company of America. The natural gas from the ruptured pipeline ignited, causing an explosion and fire aboard the ship. Only three of the fourteen crew members survived. Timmy Thomas and John Bartie did not survive, but drowned in the Gulf of Mexico approximately 20 to 30 minutes after the explosion.
Decedents' minor children filed suit against Natural Gas Pipeline (NGP), Zapata Haynie, the Jones Act employer of decedents, and Captain Darryl Gough, the master of the NORTHUMBERLAND, for wrongful death of their fathers. Bartie's common law wife and his mother also filed claims for loss of support and services. Prior to trial, plaintiffs entered into settlements with Zapata and Gough. Bartie's family settled for $700,000 and Thomas' family received $650,000. These settlements provided that Zapata would receive 50% of any settlement received in plaintiffs' lawsuit against NGP, but the payment to Zapata was not to exceed the actual settlement amount.
The two cases were consolidated for trial. Pre-trial, the court dismissed plaintiffs' claims for punitive damages, damages for nonpecuniary losses and Latia Clark's claim, finding she was not the common law spouse of decedent Bartie.
Because NGP agreed not to contest its liability, a trial on damages was conducted on May 17-19, 1994. A jury awarded each decedent $500,000 for pain and suffering, $250,000 for loss of support for each minor child and $10,000 for loss of support to Rosalie Bartie Vital, Bartie's mother.
*558 Defendant NGP appeals, asserting five assignments of error. Specifically, defendant claims the trial court erred:
1. in failing to reduce the excessive awards for pain and suffering;
2. in failing to reduce the excessive awards for loss of support, services, nurture and guidance;
3. in admitting gruesome evidence that was more prejudicial than probative;
4. in allowing a non-medical witness to give expert medical testimony contrary to evidence; and
5. in failing to reduce the awards against NGP to reflect the earlier settlements by other defendants.

LAW

Standard of Review
In Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986), the Supreme Court noted that "state courts are not required to apply Rule 52(a)a rule of federal civil procedure [the clearly erroneous standard of review]to their own appellate system for reviewing factual determinations of trial courts," citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). Therefore, the standard of review with respect to general damage awards is the abuse of discretion rule enunciated in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Only when the award of damages is beyond that which a reasonable trier of fact could assess for the effects of the particular plaintiff under the particular circumstances should the appellate court increase or reduce the award. See Cormier v. Cliff's Drilling Company, 640 So.2d 552 (La.App. 3 Cir.1994).

Assignment of Error Number One
In its first assigned error, defendant alleges that the awards of $500,000 for Bartie's pain and suffering and $500,000 for Thomas' pain and suffering are excessive and should be reduced.
The survival action in a suit resulting from the death of a tort victim includes recovery for pain and suffering, loss of earnings and other damages sustained by the victim up to the moment of death; damages for pain and suffering are properly awarded if there is a scintilla of evidence of any pre-death pain or suffering by the victim. Mathieu v. State, DOTD, 598 So.2d 676 (La.App. 3 Cir.), writ denied, 600 So.2d 665 (La.1992); Lantier v. Aetna Cas. & Sur. Co., 614 So.2d 1346 (La.App. 3 Cir.1993).
An appellate court's initial inquiry in a claim of excessive damages is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the wide discretion of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
We find no abuse of discretion by the finder of fact in this case. Before the deaths of the decedents, both Bartie and Thomas experienced a horrifying explosion and fire on the ship. Although they managed to escape death by fire on the boat itself, they both had blistered skin, indicating that they were exposed to the intense heat generated by the fire. Dennis Brooks, who rescued the only three survivors of the accident, testified about the intense heat he experienced over 500 yards from the burning boat. Brooks, who first viewed the fire by helicopter, testified that the helicopter could not fly too close to the fire because the heat from the ship caused the paint on the skin of the helicopter to bubble. Similarly, when Brooks inflated a rubber raft to use in his rescue efforts, the plastic raft became tacky from the heat.
Brooks stated that when he first approached the scene in the helicopter, he saw a black man in the water by the bow of the ship on the port side. However, the heat from the fire was so intense that Brooks could not attempt to rescue this man. Arthur Jackson, also a crew member on the ship, testified that after the accident he saw Thomas in the water off of the port bow.
*559 Further, the coroner testified that, although it was not the cause of death, both men suffered blistering on their skin before their death caused by their sudden exposure to the intense heat created by the natural gas fire. The coroner also stated that Bartie had seashells and other underwater particles in his lungs, indicating that he survived for a period of time in the water, breathing in water and other particles before he actually drowned. Halter also stated that Thomas had some food particles in his lungs, indicating that the contents of his stomach came up and were drawn back down into his lungs along with other fluids during his struggle in the water.
Therefore, we find the damage award is not excessive in light of the facts presented and affirm the award for decedents' pre-death pain and suffering.

Assignment of Error Number Two
In its second assigned error, defendant claims that the awards to decedents' minor children for loss of support, services, nurture and guidance, $250,000 to each of the two children, were excessive. Defendant argues that since Bartie never grossed more than $8,505 in any year, he would only have been able to contribute a small portion of that figure to the financial support of his son, Byron, who was ten years old at the time of Bartie's death. Defendant claims that Bartie only sporadically bought items or gave money to Byron for his support. Defendant further claims that the award is excessive because Byron only had eight years remaining until majority, and loss of support damages only apply while a child is a minor. Therefore, the award should be based on actual loss of pecuniary support, not speculative or sympathetic damages.
Defendant makes a similar argument for the award to Timmy Tyrell Strawder, the son of Timmy Thomas. Defendant claims that Thomas made even less money than Bartie, and contributed no support for the last two years of his life. Timmy Tyrell also only had eight years left before majority, and the award should only be attributable to that time period. Defendant claims that both of the awards should be reduced from $250,000 to $25,000.
Although Thomas and Bartie did not earn substantial incomes before their deaths, income is not the only factor in determining loss of support. Recovery for loss of support includes all the financial contributions that the decedent would have made to his dependents had he lived. Further, decedent's children are also entitled to recover the monetary value of services decedent provided and would have continued to provide but for his wrongful death. These services include the nurture, training, education and guidance a child would have received had his parent not been killed. Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The families of Bartie and Thomas both testified that the two men had close relationships with their sons. Each took a special interest in raising his son, although father and son did not live together. It is difficult to place a monetary value on the nurture, training and guidance a parent gives to a child. We find no abuse of discretion in the jury's finding of fact and affirm the award for loss of support. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Assignment of Error Number Three
In its third assigned error, defendant claims that the court admitted unfairly prejudicial but non-probative evidence that affected the outcome of the trial. During the coroner's testimony, plaintiffs displayed six enlarged color photographs of the bodies to the jury. These photos were on display throughout the coroner's testimony and again during closing arguments. Defendant claims that the photos offered no probative value, and were improperly admitted under Rule 403 of the Code of Evidence.
Defendant also claims that the testimony about the suffering of others involved in the accident was unfairly prejudicial and had no relevance to the deaths of Bartie and Thomas. Defendant claims the sole purpose of this graphic testimony was to incite the sympathy of the jurors.
An appellate court must place great weight on a trial court's ruling of relevancy of evidence and should not reverse such a *560 ruling in the absence of a clear abuse of discretion. Krampe v. Krampe, 625 So.2d 383 (La.App. 3 Cir.1993), writ denied, 630 So.2d 781 (La.1994). In the instant case, the photos were relevant to show the nature of decedents' injuries, such as the blistering of the skin that occurred before death. Because the defendant emphasized that the victims here did not receive burns to their skin, the pictures were relevant to show that blistering did in fact occur. Further, the color photos were relevant to demonstrate to the jury the distinction between slippage of the skin which occurs after prolonged water exposure and blistering of the skin, which occurs after exposure to extreme heat.
Additionally, the testimony of the survivors as to the conditions they experienced during the accident was relevant to the jury's evaluation of decedents' pain and suffering. Captain Gough and Arthur Jackson were two of the survivors who explained what they experienced during the accident. Both men testified that the explosion happened so fast that no one had time to grab a life jacket. Further, the heat from the fire extended several hundred yards from the boat. Both men stated that while they were in the water they had to keep ducking their heads under the water to escape the severe heat, which was blistering their skin.
We find that the trial court did not abuse its wide discretion in admitting this evidence.

Assignment of Error Number Four
In its fourth assigned error, defendant claims that one of plaintiffs' witnesses, A.E. Halter, should not have been allowed to give expert medical testimony. Defendant argues that although Judge Halter was the elected coroner for 23 years, he had no medical training and was not qualified to present expert medical testimony under Rule 702 of the Code of Evidence. However, the trial court did qualify him as an expert.
La.C.E. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Formal education in the area of expertise is not required; experience alone is enough to qualify a witness as an expert. Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La. App. 4 Cir.1991), writ denied, 592 So.2d 414, 415 (La.1992).
In the present case, Halter had held the position of coroner for over 23 years. Although he had no medical training, as coroner he had to oversee autopsies in over fifty burn cases and one hundred drowning cases. Further, the physician who actually conducted the autopsy, Dr. La Ber, was unavailable to testify as to his findings. Since Halter actually viewed the bodies and reviewed the physician's conclusions, the trial court was within its discretion to allow his testimony. Therefore, we find no merit in this assignment.

Assignment of Error Number Five
In defendant's final assignment of error, defendant claims that the trial court erred in failing to give defendant any credit for the amounts received in the pre-trial settlements plaintiffs entered into with Zapata and Gough.
In the recent case of McDermott, Inc. v. AmClyde and River Don Castings Ltd, ___ U.S. ___, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) the United States Supreme Court held that a non-settling defendant's liability should be calculated with reference to the jury's allocation of proportionate responsibility, not by giving them a credit for the dollar amount of the settlement. The Court stated "a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss."
In the present case, defendant NGP stipulated to liability in this case. It did not present the jury with the option of assessing proportionate fault among the three original defendants, Zapata Haynie Corp., Captain Gough, and NGP. Although McDermott holds that a defendant cannot pay less than its proportionate share, by stipulating liability and allowing the jury only to assess damages, the jury treated NGP as being 100% at *561 fault. Thus, NGP is not entitled to a credit for the settlement plaintiffs made with the other two defendants before trial.

Plaintiffs' Answer to Appeal
Plaintiffs filed an answer to appeal, in which they alleged the trial court erred:
1. in not allowing plaintiffs to present a claim for punitive damages;
2. in not allowing plaintiffs to present a claim for nonpecuniary damages;
3. in not allowing plaintiffs to present a claim for loss of enjoyment of life; and
4. in finding that Latia Clark was not the common law wife of decedent Bartie.

Punitive Damages
In plaintiffs' first assigned error, plaintiffs claim that under our recent decision, Butler v. Zapata Haynie Corp., 633 So.2d 1274 (La.App. 3 Cir.1994), writ granted in part and denied in part, 639 So.2d 1186 (La.1994), punitive damages may be recovered under general maritime law when the plaintiffs' claims are not brought under the Jones Act or the Death on the High Seas Act. Plaintiffs maintain that since their claims are based solely on general maritime law negligence theories and do not involve the Jones Act, DOHSA, or unseaworthiness, an award of punitive damages should be allowed.
The trial court considered whether plaintiffs could make a claim for punitive damages on a motion for partial summary judgment. The court stated that under Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), damages recoverable in a wrongful death action were limited to pecuniary or compensatory losses. Punitive damages are nonpecuniary damages and as such are not available to the plaintiffs in this case. The trial court went on to discuss the cases plaintiff had submitted in support of its argument, but in each of the three cases found that punitive damages were only awarded when a seaman was suing a shipowner for negligence or failure to pay maintenance and cure. The present case involves the family of a deceased seaman against a third party (NGP), not the shipowner. Thus, the trial court held that punitive damages were not recoverable in the present case.
We disagree. Duplantis v. Texaco, Inc., 771 F.Supp. 787 (E.D.La.1991) found that the law authorizes punitive damages for gross and wanton conduct in an action under the general maritime law not based on unseaworthiness, and allowed a party to proceed against a third party for such damages. That court pointed out that the law as enunciated in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), cited by some as a limitation on recovery of punitive damages, is limited to pecuniary damages only. The Louisiana Supreme Court has recently defined punitive damages as exemplary to punish and deter wrongdoers, whereas the primary purpose of ordinary damages is to compensate the victim. Billiot v. B.P. Oil Company, 93-C-1118, 645 So.2d 604 (La.1994). Thus we find that the trial court was incorrect in granting partial summary judgment on this issue, and remand for consideration of an award of punitive damages.

Common Law Marriage
Next, plaintiffs argue that the trial court should have recognized the common law marriage of Latia Clark and John Bartie. Plaintiffs claim that although common law marriages are precluded under the laws of Louisiana, the courts of this state have traditionally recognized their validity when contracted in other states whose laws permit such marriages. Brinson v. Brinson, 233 La. 417, 96 So.2d 653 (1957); Jones v. International Tel. & Tel. Corp., 462 So.2d 1348 (La.App. 3 Cir.), writ denied, 466 So.2d 469 (La.1985). Plaintiffs maintain that because the common law marriage between Clark and Bartie was established in Texas, which sanctions common law marriages, and the couple resided in Houston, Clark's claim as a common law spouse should be recognized. In a pre-trial hearing on this issue, the trial court heard the testimony of Rosalie Bartie Vital. Vital stated that her son, John Bartie, had an ongoing relationship with Latia Clark. Bartie would stay in Lake Charles during the fishing season, and with Clark in Houston during the off season. Vital also stated that Bartie wrote letters to Latia addressed as *562 "Latia Ann Bartie." However, on cross-examination, Vital admitted that Clark and Bartie only lived together for about a year during the 1986 and 1987 fishing seasons. After this time they broke up and Bartie returned to Lake Charles to reside with his mother. Vital further stated that the two were engaged and had planned to be married on October 8, 1989. The trial court concluded that there was not enough evidence to establish a common law marriage between Latia Clark and John Bartie and therefore dismissed Clark's claim. We find no abuse of discretion in the trial court's ruling.
As to the plaintiffs other claims on appeal, since they were not argued in brief, they are considered abandoned on appeal. Uniform Rules Courts of Appeal, Rule 2-12.4.

DECREE
The judgment of the trial court is reversed and remanded on the issue of punitive damages, and affirmed in all other aspects. Costs assessed to defendant appellant, Natural Gas Pipeline Company of America.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.