626 So.2d 724 (1993)
John Andre BERGERON, et al., Plaintiff-Appellee-Appellant,
v.
MIKE HOOKS, INC., Defendant-Appellant-Appellee.
No. 92-630.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1993.
Rehearing Denied December 16, 1993.
*725 J.B. Jones Jr., Cameron, for John A. Bergeron et al.
Robert W. Clements, Lake Charles, for Mike Hooks, Inc.
Before GUIDRY, KNOLL and WOODARD, JJ.
KNOLL, Judge.
This appeal evolves out of an accident in which a vessel belonging to plaintiff, John Andre Bergeron, collided with a partially submerged dredge pipe on a pontoon barge belonging to defendant, Mike Hooks, Inc. (Hooks, Inc.). Hooks, Inc. appeals the jury award of $50,000 general damages for pain, suffering and disability. Bergeron and his wife, Dian, appeal the propriety of the trial court's action in directing the verdict on the issue of punitive damages. For the reasons which follow, we affirm the judgment of the trial court.

FACTS
On November 16, 1988, while Bergeron was operating his fishing/shrimping vessel, the M/V SYLVIA, in the Calcasieu Ship Channel he collided with a partially submerged *726 object, which he believed to be a piece of dredge pipe belonging to a dredge owned by Hooks, Inc. As a result of the accident, Bergeron suffered physical injuries and his vessel sank. On June 30, 1989, Bergeron and Dian sued Hooks, Inc. for damages incurred as a result of the accident. Bergeron sought damages for lost wages, loss of earning capacity, mental anguish, permanent disability, and physical damages to the M/V SYLVIA. Dian sought damages for loss of consortium. The Bergerons filed a supplemental and amending petition, adding a claim for punitive damages for Hooks, Inc.'s alleged gross, wanton, and capricious disregard for their rights.
After all of plaintiff's evidence had been presented to the jury, Hooks, Inc. moved for a directed verdict on Dian's loss of consortium and punitive damage claims. The trial court directed verdict on the loss of consortium claim because Bergeron presented no evidence on that issue, and it directed verdict on the punitive damage claim finding no evidence of willful or wanton misconduct against Hooks, Inc. The Bergerons moved for a directed verdict on the issue of liability which the trial court denied.
The jury returned a verdict finding Mike Hooks, Inc. 100% at fault in the sinking of the M/V SYLVIA. The jury awarded Bergeron $37,615 in property loss, $12,000 in income loss, and $8,377 in medical expenses. Additionally, the jury awarded him $50,000 for pain, suffering, disability, etc. Both sides filed motions for judgments notwithstanding the verdict and new trials which the trial court denied.

GENERAL DAMAGES
Hooks, Inc. challenges the jury's award of $50,000 in general damages as excessive.
Louisiana jurisprudence holds that when a defendant's negligence aggravates a pre-existing injury, the defendant must compensate the plaintiff to the full extent of this aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Before an appellate court may question a jury's award of general damages as excessive, it must look first, not to prior awards, but to the individual circumstances of the present case. Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La. App. 3rd Cir.1991), writ denied, 585 So.2d 570 (La.1991). An appellate court should not disturb the damage award absent a clear abuse of discretion. Id. Our function is not to determine whether a different award might have been more appropriate, but whether the award by the trial court is reasonably supported by the record and justifiable inferences from the evidence. Karam v. DeSoto, 520 So.2d 1032 (La.App. 3rd Cir. 1987). In assessing quantum, we should consider the severity and duration of the pain and suffering. Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3rd Cir.1990).
The record shows that on November 16, 1988, sometime after 10:30 p.m. or 11:00 p.m., Bergeron and a crew member, Richard Cretini, were headed in a northerly direction on the M/V SYLVIA in the Calcasieu Ship Channel. As Bergeron was operating the M/V SYLVIA, he struck what he believed to be dredge pipe on the corner of a partially submerged pontoon. He believed this pontoon belonged to the dredge MISSOURI, which Hooks, Inc. operated in the vicinity. The impact threw Bergeron onto the deck, and his arm caught in the steering wheel, causing a ripping sensation in his chest muscles.
After the impact, Bergeron ordered Cretini to inspect the interior of the vessel to determine whether it was leaking. Then, Bergeron steered the vessel to shallow water on the west bank of the ship channel where he and Cretini further inspected the vessel. After they determined that the vessel was not leaking, Bergeron backed his vessel off the west bank and resumed his journey. Shortly thereafter, however, the M/V SYLVIA began taking on water while near the middle of the ship channel. Because a sea going tug was getting closer to them, Cretini urged Bergeron to take evasive action before the M/V SYLVIA's engine became submerged. Bergeron then placed his vessel at full throttle in an attempt to reach the east bank before sinking. He barely reached the east bank of the channel, where his submersed vessel hit bottom and rolled over.
*727 The record reveals that he and Cretini had no time to reach life jackets. In the dark waters during the dark hours of the night they held on to the side of the vessel's hull for an indeterminate period of time until they were rescued. Because Bergeron was suffering from numbness in his legs, back cramps, muscle spasms, and chest pain, 3 or 4 people had to help him aboard the dredge MISSOURI. On board, he was dazed, in pain, and spitting up blood. Bergeron testified that he cannot fish, work, sleep, or hold the wheel of his vessel for significant periods of time.
Bergeron acknowledged that in 1986, he was involved in an automobile accident. He underwent a laminectomy and spinal fusion of a degenerated ruptured disc at the L-5, S-1 vertebra in December, 1987 because of the 1986 automobile accident. Dr. William Foster and Dr. R. Dale Bernauer performed the operation. These doctors also treated Bergeron after the 1988 accident. Diagnostic testing by both physicians, specifically CAT scans, a myelogram, and a tomogram, showed no abnormalities or new injuries resulting from the accident. However, their examinations revealed that Bergeron suffered an aggravation of a pre-existing back injury.
Dr. Foster indicated that Bergeron complained of back and leg pain even after the surgery necessitated by the prior auto accident, but would have reached maximum cure within 6 months of the surgery but for the subsequent vessel accident. Dr. Foster opined that as a result of the vessel accident, Bergeron suffered an acute lumbar and cervical strain and extension of the healing process of the pre-existing back injury. Dr. Foster estimated that the muscle strains caused by the vessel accident resolved within 3 to 6 months of that accident. He felt that Bergeron should not lift things in excess of 25 pounds and should be able to steer a vessel in inland waters, but not offshore.
Dr. Bernauer testified that Bergeron had voiced complaints of pain prior to the vessel accident. He opined that the vessel accident irritated Bergeron's back and neck, that the injury was more serious because he had a prior laminectomy and fusion, and that Bergeron's complaints of pain after the vessel accident were genuine. He assessed Bergeron's disability at 50% and limited him to previous restrictions of no lifting above 25 pounds, and no stooping, crawling, climbing, or standing more than 3 hours without rest.
The record shows that Bergeron suffered severe and genuine physical and mental pain as a result of Hooks', Inc.'s negligence. We find that the record and jurisprudence support the jury's award of $50,000 for Bergeron's pain, suffering, and disability.

PUNITIVE DAMAGES
The Bergerons assert that the trial court erred in directing the verdict as to the issue of punitive damages.
Pursuant to LSA-C.C.P. Art. 1810, a court may properly grant a motion for directed verdict when, after considering all the evidence in the light and with all reasonable inferences most favorable to the opponent, the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. Only where there is substantial evidence opposed to the motion, i.e., evidence of such a quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might reach different conclusions, should the trial court deny the directed verdict motion and submit the case to the jury. Cliburn v. Colonial Penn Ins. Co., 583 So.2d 103 (La.App. 3rd Cir.1991); Phillips v. Western Co. of North America, 953 F.2d 923 (5th Cir.1992); McWilliams v. Texaco, Inc., 781 F.2d 514 (5th Cir.1986). The propriety of granting a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims. Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App. 2nd Cir.1991).
The Bergerons contend that they are entitled to punitive damages under general maritime law, see, Matter of P & E Boat Rentals, Inc., 872 F.2d 642 (5th Cir.1989). General maritime law contemplates punitive damages for gross and wanton conduct in an action under general maritime law not based on unseaworthiness. Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981). *728 In order to recover punitive damages in a maritime case, a plaintiff must establish a higher degree of fault than simple negligence. Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir.1987). Punitive damages are recoverable under general maritime law for acts which are willful, wanton, and in callous disregard for the safety of others; this requires a showing of bad faith. Harper v. Zapata Offshore Co., 741 F.2d 87 (5th Cir. 1984); Wilcox v. Kerr McGee Corp., 706 F.Supp. 1258 (E.D.La.1989); Complaint of Merry Shipping, Inc., supra.
Punitive damages are not recoverable in Louisiana unless specifically authorized by statute. International Harvester Credit v. Seale, 518 So.2d 1039 (La.1988). Punitive damages in general maritime law evolved from federal jurisprudence; therefore, we turn to the federal standard in our treatment of punitive damages.
In federal jurisprudence it is clear that punitive damages are not recoverable against the owner of a vessel for the act of the master unless it can be shown that the owner authorized or ratified the acts of the master either before or after the accident. Matter of P & E Boat Rentals, supra. A plaintiff may recover punitive damages if the acts complained of were those of an unfit master and the owner was reckless in employing him. United States Steel Corporation v. Fuhrman, 407 F.2d 1143 (6th Cir. 1969).
In studying federal jurisprudence in this area we are impressed with the high degree of negligence tolerated by the federal courts without the imposition of punitive damages. It is clear that the burden is great on a plaintiff in a claim for punitive damages to show the vessel owner authorized or ratified the acts of the master either before or after the accident. For example, in United States Steel Corporation, the court found that a single act of a vessel captain in proceeding at full speed ahead in heavy fog was insufficient to hold the corporate owner of the vessel liable for punitive damages arising out of the collision. Even a deviation from Coast Guard recommended compass headings would not support an award of punitive damages against the corporation.
Likewise, in Wilcox, supra, an injured seaman was not entitled to punitive damages when there was no showing that any corporate officer or policymaker authorized or ratified acts alleged to constitute wanton misconduct. Also, in Matter of P & E Boat Rentals, Inc., supra, the court found that a time charterer of a crew boat was not liable for punitive damages based on the wanton acts of its foreman who exercised no policy making authority when the corporation did not authorize or ratify the acts.
Turning to the case sub judice, the Bergerons argue that they are entitled to punitive damages because: (1) evidence suggested that the captain of the vessel was drunk or absent; (2) no lights were burning on numerous pontoon barges projected across the waterway from the dredge MISSOURI; (3) the radio was unmanned which constituted wanton, willful conduct or callous disregard for Bergeron's safety; and, (4) the search and rescue procedure of the dredge MISSOURI amounted to callous conduct.
After carefully reviewing the individual arguments raised by the Bergerons in support of their claim for punitive damages, we note that the record is void of evidence that Hooks, Inc. "authorized or ratified the acts of the master either before or after the accident." P & E Boat Rentals, Inc., supra. On this basis, we find that the trial court properly granted Hooks, Inc.'s motion for directed verdict.
For the above and foregoing reasons, we affirm the judgment of the trial court. We assess costs equally between Dian and John Andre Bergeron and Mike Hooks, Inc.
AFFIRMED.