782 So.2d 1168 (2001)
Jeff and Mary POE, et al.
v.
PPG INDUSTRIES, Hartford Accident and Indemnity, First State Insurance Company and Twin City Fire Insurance Company.
Clay Adams, et al.,
v.
PPG Industries, Hartford Accident and Indemnity, First State Insurance Company and Twin City Fire Insurance Company.
Jeff and Mary Poe, etc.,
v.
PPG Industries, Inc., et al.
Clay Adams, et al.,
v.
PPG Industries, et al.
Nos. 00-1141, 00-1142, 00-581.
Court of Appeal of Louisiana, Third Circuit.
March 28, 2001.
*1169 J.B. Jones, Jennifer Jones, Jones Law Firm, Cameron, LA, Counsel for Plaintiffs/Appellees, Clay Adams.
Martin Golden, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, Counsel for Defendants-Appellants, Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company.
Louis G. Adolfsen, Neil S. Sambursky, Melito & Adolfsen, New York, NY, Counsel for Defendants/Appellants, Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company.
*1170 Edward J. Koehl, Jr., Robert T. Lemon, II, Jones, Walker, Waechter, Poitevent, Carrére & Denégre, L.L.P., New Orleans, LA, Counsel for Defendants/Appellants, Hartford Accident and Indemnity, First State Insurance Company and Twin City Fire Insurance Company.
Drew Ranier, Ranier, Gayle & Elliot, Lake Charles, LA, Counsel for Plaintiffs/Appellees, Jeff & Mary Poe.
Robert McCall, Baggett, McCall & Burgess, Lake Charles, LA, Counsel for Plaintiffs/Appellees, Clay Adams.
Robert Redwine, Sutterfield & Webb, New Orleans, LA, Counsel for Defendant/Appellee, Allianz Insurance Company.
David Fraser, Tynes, Fraser, Morris & Wheeler, Lake Charles, LA, Counsel for Defendants/Appellees, Cigna Specialty Insurance Company and Pacific Employers Insurance Company.
William Erickson, Robins, Kaplan, Miller & Ciresi, Boston, MA, Counsel for Defendants/Appellees, Argonaut Insurance Company, Evanston Insurance Company, Gibraltor Reinsurance Company, Government Employees Insurance Company, Prudential Reinsurance Company, RLI Insurance Company, and Northwestern National Insurance Company.
Richard Geddes, Sedgwick, Detert, Moran & Arnold, Chicago, IL, Counsel for Defendant/Appellee, XL Insurance Co., Ltd.
Scott Morgan, Elkins & Associates, New Orleans, LA, Counsel for Defendant/Appellee, Adriatic Insurance Co.
Thomas Bergstedt, Bergstedt Law Firm, Lake Charles, LA, Counsel for Defendants/Appellees, OXY USA and Occidental Chemical Corp.
John Braymer, Baton Rouge, LA, Counsel for Defendant/Appellee, Gulf States Utilities.
Court composed of THIBODEAUX, PETERS, and PICKETT, Judges.
THIBODEAUX, Judge.
Jeff and Mary Poe, d/b/a Big Lake Guide Service versus PPG Industries, Inc., et al., and Clay Adams, et al. versus PPG Industries, Inc., et al., were consolidated for purposes of this appeal. Defendants-Appellants, Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company (hereinafter referred to collectively as "Hartford"), appeal the trial court's judgment granting Plaintiffs' Motion for Summary Judgment. Hartford's appeal was consolidated with its writ application regarding the trial court's denial of its Motion for Summary Judgment and/or Motion to Strike regarding the plaintiffs' claims for punitive damages. The plaintiffs, a group of commercial fishermen, seek punitive damages for the alleged contamination of the Calcasieu Estuary by PPG.

I.

ISSUES
The issues presented for review are: (1) whether the trial court erred in finding that punitive damages are available under the general maritime law in a case where the Jones Act is not involved; and (2) whether the trial court erred in finding that the plaintiffs' claims for punitive damages are not preempted by federal statute.

II.

FACTS
In March 1989 two similar suits, Clay Adams, et al. v. PPG Industries, Inc., et al., bearing Docket No. 10-11752, and Jeffrey Poe, et al. v. PPG Industries, Inc., et al., bearing Docket No. 10-11754, were *1171 brought in the 38th Judicial District Court in Cameron Parish against PPG Industries, Inc. (hereinafter "PPG"), PPG executive officers, and insurance companies who provided insurance to PPG. The event which precipitated the filing of the suit was the issuance of an advisory by the Louisiana Department of Environmental Quality. This advisory warned against the consumption of seafood caught in certain portions of the Calcasieu Estuary. The plaintiffs (hereinafter "fishermen") claimed damages as a result of the discharge of the chemicals, hexachlorobenzene and hexachlorobutadien, from PPG's Lake Charles plant into the water of Bayou D'Inde, which contaminated the commercial fishing area of the Calcasieu Estuary. The fishermen seek economic damages for the loss of their livelihood as well as punitive damages.
In May of 1995, the fishermen reached a settlement with PPG for the uninsured portion of their claim. The 38th Judicial District Court dismissed with prejudice all of the fishermen's claims against PPG and its employees. The judgment of dismissal reserved the fishermen's right to proceed directly against the liability insurers of PPG. Prior to this settlement, the fishermen joined dozens of insurance companies as defendants in the case, all of whom were alleged to have provided policies of liability insurance to PPG through the years when PPG's pollution of the Estuary occurred. The fishermen asserted a direct action against various PPG insurers including Hartford Accident and Indemnity Company, Twin City Fire Insurance Company and First State Insurance Company and other insurers previously dismissed without prejudice who were not parties to the settlement agreement.
Hartford filed a Motion for Summary Judgment or, in the alternative, Motion to Strike Plaintiffs' Claims for Punitive Damages. Hartford Accident and Indemnity Company issued primary general liability coverage to PPG for the period from July 1953 through July 1961 and from July 1971 through July 1986 and issued excess liability coverage to PPG for the period from July 1977 through July 1987. First State Insurance Company issued excess general liability coverage for the period from July 1970 through July 1979 and from July 1983 through July 1984. Twin City Fire Insurance Company issued a single general liability policy for the period July 1982 through July 1984.
The fishermen filed an opposition to Hartford's Motion and their own cross-claim for summary judgment as to the availability of punitive damages under general maritime law. The fishermen contend that they are among a limited class of individuals who are eligible to recover punitive damages, if the imposition of such damages is justified by the facts of their case. The trial court denied Hartford's Motion for Summary Judgment and granted the fishermen's Motion for Summary Judgment. The judgment was certified as final for purposes of immediate appeal.
Hartford applied for supervisory writs as to the denial of its Motion for Summary Judgment and appealed the granting of the fishermen's Cross-Motion for Summary Judgment. This Court granted Hartford's Application for Supervisory Writs for the limited purpose of consolidation with this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court in Louisiana is constitutionally authorized to review both law and facts. La. Const. art. V, § 10(B). Appellate courts review summary judgments de novo, using the same criteria *1172 applied by the trial court in determining whether summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
The burden of production remains with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C)(2). Once the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden of production shifts to the nonmoving party to present evidence demonstrating the existence of issues of material fact which preclude summary judgment. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.

The Availability of Punitive Damages Under General Maritime Law
Hartford first contends that the United States Supreme Court's decision in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) renders punitive damages unavailable to the fishermen in this case as a matter of law. The Supreme Court's opinion in Miles made no reference to the availability of punitive damages. Miles dealt with noncompensatory damages, other than punitive, to an injured claimant. In Miles, a Jones Act seaman died when a fellow crew-member stabbed him on board their employer's vessel. The decedent's mother sued the vessel's owner, the charterer, and the ship's operator, asserting a negligence claim under the Jones Act, 46 U.S.C. § 688, and a claim of unseaworthiness under general maritime law. The decedent's mother sought loss of society damages, via the unseaworthiness claim as part of the damages claimed. The Supreme Court concluded that such damages were not available. It reasoned that since such nonpecuniary damages were not available under the Jones Act, such damages should not be available under a general maritime law claim for unseaworthiness.
The Supreme Court in Miles expressly stated that it was granting certiorari on only two issues, whether or not a non-dependent parent of a deceased seaman can recover for loss of society under the general maritime law, and whether the estate of a decedent is entitled to recover for the future lost earnings of a seaman. The Court's decision did not address the denial of the right of the seaman's mother to recover noncompensatory punitive damages. The Supreme Court in Miles did deny recovery for loss of society, which is a form of nonpecuniary relief. The Court was trying to ensure a uniform scheme of recovery regardless of whether a wrongful death action was brought under the Death on the High Seas Act, 46 U.S.C. § 761, (hereinafter "DOHSA"), the Jones Act or general maritime law. Those statutory schemes provide only for pecuniary relief: the DOHSA conclusively and the Jones Act implicitly, through its incorporation of the Federal Employers' Liability Act (hereinafter "FELA"), which, prior to the enactment of the Jones Act, had been construed to allow only pecuniary relief. Miles, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (citing Michigan Cent. R.R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913)). As the Court reasoned: "In this era, an admiralty court should look primarily to these legislative enactments for policy guidance .... [and] must be vigilant not to overstep the well-considered boundaries imposed by federal *1173 legislation." Id. at 27, 111 S.Ct. at 323. Miles, therefore, does not, as Hartford contends, signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable relevant legislation.
Punitive damages serve a different purpose than compensatory damages. Punitive damages, as the name suggests, are meant to penalize a recalcitrant employer for its egregious conduct and deter that employer from future unlawful behavior. They are not meant to make the claimant whole. The focal point in awarding punitive damages is on the injuring partythe defendant. Thus, a decision as to whether punitive damages may be awarded in maritime personal injury cases should not be made with reference to the criteria for recovery articulated in cases such as Miles, which determine only which kinds of compensatory damages may be awarded in certain maritime personal injury cases. Robert Force, The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases, 55 La. Law Rev. 745 (Mar.1995). In Hannon v. Waterman S.S. Corp., 1991 WL 88012 (E.D.La.1991), the court held that because Miles did not expressly address punitive damages, such damages were still recoverable under the general maritime law. The Miles decision does not provide a basis for denying the right of commercial fishermen to seek punitive damages against a third party such as PPG.
Punitive damages are rarely imposed but have long been recognized as an available remedy in general maritime actions where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard for the rights of others. The Amiable Nancy, 16 U.S. (3 Wheat.) 546, 4 L.Ed. 456 (1818); Muratore v. M/S Scotia Prince, 845 F.2d 347 (1st Cir.1988); Protectus Alpha Navigation Co. v. North Pac. Grain Growers, 767 F.2d 1379 (9th Cir.1985). Indeed, punitive damages as a response to wrongful conduct pre-dated the enactment of the Jones Act. See generally, David W. Robertson, Punitive Damages in American Maritime Law, 28 J. Mar. L. & Com. 73. The Fifth Circuit first recognized a cause of action for punitive damages under the general maritime law in Dyer v. Merry Shipping, 650 F.2d 622 (5th Cir.1981).
Nonetheless, after the Supreme Court's decision in Miles, courts have been increasingly hesitant to allow punitive damages in some general maritime actions involving personal injury or death. The Court in Miles enunciated principles of uniformity relevant to wrongful death actions in maritime tort law. Hartford wants this Court to extend Miles to the present case in an effort to bar recovery of punitive damages in all general maritime cases. This Court, however, does not believe the decision in Miles should be read so broadly.
Hartford also contends that Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir.1995) (en banc) cert. denied, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996) precludes the fishermen from recovering punitive damages in this case. In Guevara, the U.S. Fifth Circuit reviewed whether punitive damages could be awarded in a general maritime law maintenance and cure action. The en banc court held that in view of the uniformity principle of Miles, its prior decision in In re Merry Shipping, Inc., which held that punitive damages could be recovered in a general maritime law unseaworthiness action, was effectively overruled. Id. The court in Guevara noted that maintenance and cure is an area of the general maritime law where Congress has not legislated. However, *1174 they noted that failure to pay maintenance and cure in cases of personal injury could give rise to a Jones Act cause of action. The Fifth Circuit concluded that because of this potential statutory/general maritime law overlap in the factual circumstances giving rise to the claim, the uniformity principle of Miles precludes a general maritime law action for punitive damages in some circumstances.
The Guevara decision does not foster Hartford's argument as it merely illustrates that Miles may be applicable in those areas of maritime law where, at the very least, there is an overlap between statutory and decisional law. However, there is no statutory/general maritime law overlap in this case and thus Guevara is inapplicable. The defendants cite the Clean Water Act of 1977, 33 U.S.C. §§ 1251-1387, and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, in support of their position that there is potential statutory overlap which triggers Miles' analytical methodology. We disagree.
Certainly, the Clean Water Act and CERCLA reflect a policy of environmental activism. However, these enactments are not sufficiently relevant to the claims of these fishermen to invoke a shield against punitive damages. They are not intended as a means to allow private citizens a remedy, as in a Jones Act or DOHSA case. The Clean Water Act and CERCLA are pollution statutes which do not address maritime personal injury claims and their concomitant appropriate remedies. Simply stated, we fail to discern the existence of any applicable relevant legislation which eviscerates the deterrent protection of punitive damages in a general maritime claim where the Jones Act or DOHSA is not implicated, as in this case. Congress has not prescribed remedies for situations such as exists here and state law remedies therefore are not supplanted. See generally Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).
Absent statutory authority, courts in admiralty cases apply the general maritime law, a body of judge-made federal common law pertaining to admiralty. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). "[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." Moragne v. States Marine Lines, Inc., 398 U.S. 375, 387, 90 S.Ct. 1772, 1781, 26 L.Ed.2d 339 (1970). The only established rules against punitive damages are the limitations of the DOHSA and the Jones Act, neither of which is applicable to the facts of the present case. Thus, the decisions of Miles and Guevara do not act as legal impediments to the fishermen to seek punitive damages.
This court has held on numerous occasions that punitive damages are available under a general maritime claim. In Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3 Cir.), writs denied, 616 So.2d 701, 702 (La.1993), this court noted that punitive damages are meant to punish and deter and are recoverable under the general maritime law on a showing of willful and wanton misconduct by the shipowner. "In order to recover punitive damages in a maritime case, a plaintiff must establish a higher degree of fault than simple negligence." Bergeron v. Mike Hooks, Inc., 626 So.2d 724, 728 (La.App. 3 Cir.1993). This court further held that "[p]unitive damages are recoverable under general maritime law for acts which are willful, wanton, and in callous disregard for the safety of others; this requires a showing *1175 of bad faith." Id. (citing Harper v. Zapata Off-Shore Co., 741 F.2d 87 (5th Cir.1984)). Furthermore, this court in Strawder v. Zapata Haynie Corp., 94-453, 94-454 (La. App. 3 Cir. 11/2/94); 649 So.2d 554 held that plaintiffs, crew members who died aboard a fishing vessel that exploded after it struck an unmarked submerged natural gas pipeline, were not precluded from recovering punitive damages.

Duplantis v. Texaco, Inc., 771 F.Supp. 787 (E.D.La.1991) found that the law authorizes punitive damages for gross and wanton conduct in an action under the general maritime law not based on unseaworthiness, and allowed a party to proceed against a third party for such damages. That court pointed out that the law as enunciated in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), cited by some as a limitation on recovery of punitive damages, is limited to pecuniary damages only. The Louisiana Supreme Court has recently defined punitive damages as exemplary to punish and deter wrongdoers, whereas the primary purpose of ordinary damages is to compensate the victim. Billiot v. B.P. Oil Company, 93-C-1118, 645 So.2d 604 (La.1994). Thus, we find that the trial court was incorrect in granting partial summary judgment on this issue, and remand for consideration of an award of punitive damages.
Id. at 561.
Just recently, this circuit reaffirmed its view that punitive damages are available under general maritime law. In Doxey v. Lake Charles Pilots, Inc., 00-530 (La.App. 3 Cir. 1/31/01); 781 So.2d 589, the court held that punitive damages may be recoverable for a claim involving the willful or reckless destruction of property. In Doxey, the court observed that since statutory guidance limiting damages in this factual circumstance was lacking, the uniformity principles articulated in Miles, and thus Miles' analytical methodology, were inapplicable. We look upon Doxey with approval.
In sum, this is neither a Jones Act nor a DOHSA case and, in the absence of any relevant legislation, we hold that the uniformity principle enunciated in Miles is not applicable to this case. Congress has not spoken to this situation and this court sees no reason under Miles or Guevara for barring the fishermen from seeking punitive damages. Thus, we affirm the trial court's judgment that the fishermen have a cause of action for punitive damages under the general maritime law.

The Preemption Argument
Hartford contends that the Clean Water Act, the Comprehensive Environmental Response, Compensation, and Liability Act and the Oil Pollution Act (hereinafter "OPA") in and of themselves preempt the fishermen's claims for punitive damages under the general maritime law. We disagree. First, OPA is not applicable to this case. There is no allegation by the fishermen that PPG disposed of oil in the Calcasieu Estuary. The claim by the fishermen is based on the discharge by PPG of the carcinogenics known as hexachlorobenzene and hexachlorobutadien into the Calcasieu Estuary. Furthermore, the OPA was not enacted until 1990, a year after the present action was filed.
Hartford also contends, in support of its preemption argument, that the holding in Milwaukee v. Illinois, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (hereinafter "Milwaukee II") preempts the claims of the fishermen. Milwaukee II held that the Clean Water Act preempted federal common law nuisance claims arising in interstate waters. In further support of its preemption argument, Hartford cites Middlesex County Sewerage Authority v. National *1176 Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In Middlesex, the Supreme Court extended the preemptive effect of the Federal Water Pollution Control Act (hereinafter "FWPCA" which is now the CWA) to cases involving the alleged pollution of coastal waters.
However, in International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), the Supreme Court held that the Clean Water Act does not preempt state common law nuisance claims, if liability is determined under the law of the source state.
The CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act. The saving clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State.
Id. at 479 U.S. at 497, 107 S.Ct. at 814.
Hartford also cites to Conner v. Aerovox, Inc., 730 F.2d 835 (1st Cir.1984), cert denied, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985) where the court considered suits brought by licensed commercial fishermen who asserted maritime tort and maritime nuisance claims for the alleged damage to their fishing grounds caused by the discharge of toxic substances. The court held that the FWPCA preemption did not stop at federal common law, in the narrow sense, but extended to judge-made federal maritime law as well. However, that holding was limited as it did not include any claims for discharge occurring prior to the enactment of the 1972 amendments to the FWPCA.
[FN10]. Plaintiffs have not contended that any part of their alleged injuries were suffered due to discharges prior to enactment of the 1972 Amendments. We therefore do not consider whether FWPCA displaces the federal common law of nuisance remedy for discharges of pollutants into navigable waters prior to 1972. See Outboard Marine, 680 F.2d at 476-81 (concluding that FWPCA displaced federal common-law nuisance claim for pre-1972 discharges).
Id. at 842. Hartford provided coverage to PPG before and after 1972. Also, claims based on negligence or willful and wanton misconduct under the general maritime law were not held to be preempted by federal statute under the Conner decision. The plaintiffs in Conner did not present a maritime tort under a negligence theory. The court stated as follows:
[FN6]. The plaintiffs have not pressed a maritime tort under a negligence theory before this court. See Oswego, 664 F.2d at 334, 343-44. We do not consider whether such a claim is appropriate where intentional discharge of pollution into public waters is at issue, nor whether a negligence action for injuries due to water pollution still sounds in maritime tort after FWPCA's enactment.
Id. at 838.
Commercial fishermen have long been granted by admiralty law a special right to bring damages for pollution to their fishing grounds, even if their only claims are for economic loss. In Golnoy Barge Co. v. M/T Shinoussa, 1993 WL 735038 (S.D.Tex. 1993), affirmed, 3 F.3d 439 (5th Cir.1993) the Court held that the plaintiffs' claims were not preempted by the FWPCA. In that case, commercial fishermen brought a claim for damages resulting from an oil spill in Galveston Bay. The court reasoned:
Petitioners' preemption argument is based on a line of United States Supreme Court cases holding that certain federal common law or maritime law *1177 nuisance claims for damages to private citizens have been statutorily preempted by the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251, et seq.
The Supreme Court, in Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), considered "whether all federal common-law nuisance actions concerning ocean pollution now are preempted by the legislative scheme contained in the FWPCA ... and, ... if not, whether a private citizen has standing to sue for damages under the federal common law of nuisance." Sea Clammers, 101 S.Ct. at 2621. The Court concluded that "the federal common law claim of nuisance in the area of water pollution is entirely pre-empted by the... comprehensive scope of the FWPCA." Id. at 2627 (citing Milwaukee II). In Milwaukee II, the Court had concluded that the FWPCA "occupied the field" of water pollution and that "[t]he establishment of such a self-consciously comprehensive program by Congress ... strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." 101 S.Ct. at 1793.
These Supreme Court cases all involve remedies in nuisance actions for the intended release of pollutants into public waterways. The case before this court does not involve the controlled or intended release of pollutants into the waterways. Instead, this case involves alleged negligence causing an accidental oil spill by a tanker. This case is thus distinguishable from the federal common law nuisance actions found to be preempted by Milwaukee II and related authorities.
Congress expressly preserved claims such as those raised here through the "citizen suit" provision of the FWPCA. The "citizen suit" provision contains a savings clause which states: "[n]othing in the [citizen suit provision] shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief." 33 U.S.C. § 1265(e) (emphasis added). As the Senate Report on the 1972 FWPCA Amendments states: "the [savings clause] would specifically preserve any rights and remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with requirements under this Act would not be a defense to a common law action for pollution damages." S.Rep. No. 92-414, p. 81 (1971), U.S.Code Cong. & Admin.News 1972, p. 3746.
This court therefore finds that the FWPCA does not preempt claimants' right to seek damages under the commercial fisherman exception to the rule stated in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).
Id. at *2.
In In re Complaint of Ballard Shipping Co., 810 F.Supp. 359, (D.R.I.1993), aff'd in part, rev'd in part on other grounds, 32 F.3d 623 (1st Cir.1994), the court reexamined the holding of Conner. In that case, the claimants brought an action for damages resulting from an oil spill in Narragansett Bay from the vessel M/V WORLD PRODIGY, which was owned by Ballard. The defendants contended that the claim by the claimants, seafood dealers, tackle shop operators, restaurant owners and employees, a scuba equipment and canoe rental shop, and a variety of other shoreline businesses operating in the Narragansett Bay area, under maritime law was *1178 preempted by the FWPCA. The court reasoned otherwise:
In this case, to support their claim that the FWPCA abrogates general maritime law regarding water pollution, including the Robins Dry Dock rule, the claimants rely on Conner v. Aerovox.... Although the First Circuit held in Conner that the FWPCA preempted certain maritime tort claims, the claimants read the case too broadly. In Conner, the Court held that the FWPCA preempted maritime law "to the extent it would afford a damage remedy for pollution of navigable waters based on a common-law nuisance theory." The First Circuit, which specifically noted, "We do not consider ... whether a negligence action for injuries due to water pollution still sounds in maritime tort after FWPCA's enactment," did not determine that the FWPCA displaced all judge-made maritime law regarding water pollution. Similarly, cases upon which Conner was based also limited their holdings that the FWPCA preempted general maritime law to claims based on the nuisance theory.
Id. at 367. (citations omitted). Although the claimants were not commercial fishermen, the court still reasoned that the FWPCA does not displace all general maritime tort law regarding negligence claims.
The interests of the commercial fishermen must be protected in the absence of any applicable federal legislation. The fishermen were exercising their public right to make commercial use of the Calcasieu Estuary. The dumping of pollutants by PPG into the Calcasieu Estuary interfered with the special interest of the fishermen to use the public waters to earn their livelihood. The Clean Water Act, the Comprehensive Environmental Response, Compensation, and Liability Act and the Oil Pollution Act are inapplicable to this case and do not preempt the commercial fishermen from seeking punitive damages.

IV.

CONCLUSION
This is neither a Jones Act case, nor a DOHSA case and, in the absence of any relevant legislation, the uniformity principle enunciated in Miles is not applicable to this case. Also, there is no federal preemption under the Clean Water Act, the Comprehensive Environmental Compensation, and Liability Act and the Oil Pollution Act. Therefore, the commercial fishermen are not prevented from seeking punitive damages.
For the above reasons, the judgment of the trial court granting summary judgment to the plaintiffs is affirmed with all costs of this appeal assessed to the appellants.
AFFIRMED.
PETERS, J., concurs in the result.