815 So.2d 968 (2002)
Lola Jones QUINN, et al.
v.
ST. CHARLES GAMING COMPANY, INC., et al.
No. 01-1038.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
*969 Steven Broussard, Lake Charles, Counsel for Plaintiffs in Intervention/Appellees Quan Duc Do, Phong Duc Do.
J.B. Jones Jr., The Jones Law Firm, Cameron, Counsel for Plaintiffs/Appellees Betty L. Hicks, Eugene P. Jones, Lola Jones Quinn, Arnold C. Jones, Sr., Judith Ann Jones, Suetta M. Burney, Arnold C. Jones, Jr.
Bruce Victor Schewe, Brian D. Wallace, Maurice Edward Bostick, Evan Thomas Caffrey, Phelps Dunbar, New Orleans, Counsel for Defendant/Appellant St. Charles Gaming Company, Inc.
Andrew Robinson Johnson IV, Plauche, Smith & Nieset, Lake Charles, James Anthony Blanco, Stockwell, Sievert, Lake Charles, Counsel for: State Farm Mutual Auto Ins. Co.
Frederick L. Cappel, Raggio, Cappel, Lake Charles, Counsel for: Wally Gollot.
Michael Gerard Lemoine, Breaud & Lemoine, Lafayette, Counsel for: Gulf Pride Shrimp Company.
James L. Pate, Laborde & Neuner, Lafayette, Counsel for: St. Paul Guardian Ins. Co.
Al M. Thompson Jr., Berrigan, Litchfield, New Orleans, Counsel for: Wally Gollot Joel Waltman Lucky Seafood.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The defendant, St. Charles Gaming Company, Inc., d/b/a Isle of Capri Casino Lake Charles, seeks supervisory writs on the trial court's denial of its motion for partial summary judgment on the issue of *970 whether non-pecuniary damages are recoverable pursuant to general maritime law under the facts at issue.

FACTS
This matter was consolidated with its companion case. Quinn v. St. Charles Gaming Company, Inc., d/b/a Isle of Capri Casino-Lake Charles, 01-794 (La.App. 3 Cir. 2/6/02), 815 So.2d 963, decided this same day. Briefly, the heirs of Ramona Jones allege that St. Charles served excessive amounts of alcohol to Ninh V. Do between April 30 and May 1, 2000, and then failed to adequately supervise him; thus, allowing him to leave its premises with a blood alcohol level beyond the legal limit. A short time later, he collided head-on with a vehicle driven by Jones, killing both instantly.
In their suit for damages against St. Charles, Jones' heirs. Lola Jones Quinn, Arnold C. Jones, Sr., Judith Ann Jones, Suetta M. Burney, Arnold C. Jones, Jr., Betty L. Hicks, and Eugene P. Jones (collectively referred to as Quinn), sought pecuniary and exemplary damages under the general maritime law. Do's children, Phong Duc Do and Quan Duc Do (Intervenors), intervened in the suit seeking similar damages from St. Charles. After the trial court denied its motion for summary judgment on the issue of dram shop liability, St. Charles sought a partial summary judgment to preclude the recovery of non-pecuniary damages under general maritime law. This motion was also denied by the trial court. This application for supervisory writs followed. Although this writ was in contravention of our July 26, 2001 stay order in docket number 01-794, we denied both Quinn and the Intervenors' motion to dismiss and granted the writ.

PUNITIVE DAMAGES
In deciding whether non-pecuniary damages are available under the general maritime law, we need look no further than the United States Supreme Court's decision in Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).
In Miles, a seaman was stabbed to death by a fellow crew member while the vessel on which they both served was docked in state territorial waters. His mother, Miles, sought damages based on two theories of recovery: (1) negligence pursuant to the Jones Act, and (2) unseaworthiness pursuant to general maritime law. The damages sought included loss of society and a survival action for lost future earnings. In determining whether these damages were available, the Supreme Court first exhaustively reviewed its prior opinion in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which it created a general maritime cause of action for wrongful death. In doing so, the Court illustrated the principles to be employed by a court in an admiralty setting:
We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.
Miles, 498 U.S. at 27, 111 S.Ct. at 323.
In determining whether Miles could recover damages for loss of society and *971 whether her son's estate could recover for his lost future earnings, the Court first looked to the recovery allowed by the Jones Act and the Death on the High Seas Act (DOHSA) in the death of a seaman. In DOHSA, Congress explicitly limited the recovery in wrongful death actions to pecuniary damages. Although the Jones Act does not specify the type of damages recoverable in a wrongful death action, the Court reasoned that it too limited them to pecuniary damages through its incorporation of the Federal Employers Liability Act (FELA), 46 U.S.C.App. § 688. Since FELA's wrongful death provision was identical to that of Lord Campbell's Act, which had long been interpreted as allowing only the recovery of pecuniary damages, the Court held that Congress was aware of that limitation and intended its incorporation into the Jones Act. Thus, it held that the Jones Act allows no recovery for non-pecuniary damages in a wrongful death action based on negligence.
In accordance with the "constitutionally based principle that federal admiralty law should be `a system of law coextensive with, and operating uniformly in, the whole country,'" the Court concluded that damages for loss of society were not available under the general maritime law. Moragne, 398 U.S. at 402, 90 S.Ct. 1788, quoting The Lottawanna, 21 Wall. 558, 575, 22 L.Ed. 654 (1875). In so holding, it stated:
It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.
Miles, 498 U.S. at 32-33, 111 S.Ct. at 326.
In addressing the survival claim for loss of future earnings, the Court did not reach the issue of whether a survival action existed under the general maritime law. Rather, it held that such damages were not available because Congress had already spoken with regard to this type of damages in the Jones Act/FELA. Applying the uniformity principles which guide admiralty law, the Court held that since the Jones Act limited recovery to losses suffered during a seaman's life, Miles was precluded from recovering her son's loss of future earnings under general maritime law.
Applying the principles set out in Miles, this court has previously held that punitive damages are available under general maritime law in cases involving damage to property. Doxey v. Lake Charles Pilots, Inc., 00-530 (La.App. 3 Cir. 1/31/01), 781 So.2d 589, writ denied, 01-0614 (La.5/4/01), 791 So.2d 654, cert. denied, ___ U.S. ___, 122 S.Ct. 215, 151 L.Ed.2d 153 (2001), and Poe v. PPG Indus., 00-1141, 00-1142, 00-581 (La.App. 3 Cir. 3/28/01), 782 So.2d 1168, writ denied, 01-1239 (La.6/22/01), 794 So.2d 801.
In Doxey, we reviewed Miles and subsequent cases dealing with its application, before deciding that its uniformity principles were inapplicable in a case dealing with the alleged wanton and willful destruction of property. In doing so, we quoted with approval CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 700 (1st Cir.1995), in declaring that "Miles ... does not ... signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation." Doxey, 781 So.2d at 598. Finding an absence of statutory remedial measures limiting the damages *972 available to the plaintiff in Doxey, we declined to apply Miles and held that punitive damages were available under general maritime law relative to the facts at issue.
Two months later, a different panel of this court likewise held that Miles' limiting principles were inapplicable in a case dealing with the award of punitive damages stemming from the pollution of a commercial fishing area by PPG Industries, Inc. Finding historical support for the award of punitive damages in instances where the "defendant's intentional or wanton and reckless conduct amounted to a conscious disregard for the rights of others," and an absence of statutory authority pertaining to the destruction of property, we held that neither Miles nor Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir.1995) (en banc), cert. denied, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996), applied to limit the plaintiffs from seeking punitive damages.[1]Poe, 782 So.2d at 1173.
Applying the principles garnered from Miles and our holdings in Doxey and Poe, we find that the trial court properly denied St. Charles' partial motion for summary judgment on the issue of punitive damages. Unlike the court in Miles, which sailed into "occupied waters," we sail into unchartered waters. Miles, 498 U.S. at 36, 111 S.Ct. at 327. There is no relevant congressional tort recovery regime pertaining to the wrongful death of a nonseafarer within state territorial limits. Therefore, the limiting principles pronounced in Miles do not apply. As we quoted in Poe, 782 So.2d 1168, 1174, from Moragne, 398 U.S. at 387, 90 S.Ct. at 1781. "[C]ertainly, it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." Accordingly, until Congress addresses this issue, we find that Quinn and the Intervenors are entitled to seek punitive damages under general maritime law.

LOSS OF SOCIETY
Included in Quinn and the Intervenors' claims for damages are damages for loss of society. St. Charles argues that they are precluded from recovering such damages under general maritime law. However, we agree with Quinn and the Intervenors that these damages are available to them via the application of Louisiana law pursuant to Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).
In Yamaha, twelve-year-old Natalie Calhoun was killed when the jet ski she was riding slammed into a moored vessel in territorial waters off the coast of Puerto Rico. Her parents filed suit in federal court against the manufacturer of the jet ski, seeking damages pursuant to Pennsylvania's wrongful death and survival statutes. Yamaha sought a partial summary judgment seeking to preclude the recovery of non-pecuniary damages, arguing that the general maritime wrongful death action recognized in Moragne applied in state territorial waters to displace all state law remedies. The Court disagreed:
When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement *973 of the damages statutorily provided.
Id. at 215, 116 S.Ct. at 627. Noting an absence of congressional limitations on the remedies available for the wrongful death of nonseafarers in territorial waters, the Court held that the remedies available to the Calhouns for Natalie's death were governed by Pennsylvania law.
As we have already stated, there is no comprehensive tort recovery regime to be uniformly applied pertaining to the death of a nonseafarer within a state's territorial limits. Thus, the holding in Yamaha applies, allowing Quinn and the interveners to supplement general maritime law by seeking the damages available to them pursuant to Louisiana law. Since damages for loss of society are available under Louisiana law, St. Charles' motion for partial summary judgment was correctly denied.

CONCLUSION
For the foregoing reasons, we find that the trial court correctly denied the motion for partial summary judgment on the issue of non-pecuniary damages filed on behalf of St. Charles Gaming Company, Inc., d/b/a Isle of Capri CasinoLake Charles. Accordingly, this writ is denied. The costs of this appeal are assessed to the defendant-appellant, St. Charles Gaming Company, Inc., d/b/a Isle of Capri Casino Lake Charles.
WRIT DENIED.
NOTES
[1] In Guevara, the Fifth Circuit, sitting en banc, held that punitive damages were no longer available under general maritime law for the wilful nonpayment of maintenance and cure. As stated by Poe, 782 So.2d at 1174, Guevara "merely illustrates that Miles may be applicable in those areas of maritime law where, at the very least, there is an overlap between statutory and decisional law."